Today's theme is straightforward. My client, Mr. Abuhawa, has yet to receive a fair and just hearing or consideration of his asylum claim. I know that the briefing involved dozens of pages and numerous cases, but I would like to focus the court today, if I could, on two opinions that were decided, frankly, after the briefing closed. And one of those was submitted along with the petitioner's Rule 28J correspondence, and it's the decision of Chawla, C-H-A-W-L-A v. Holder. It was decided just last month, and as of yesterday, I didn't have a proper fed third site for it. But in the Chawla case, this court took the immigration judge to task for a series of adverse credibility findings that were made in a manner that was inconsistent with the evidence in the record, to the extent that ultimately the court concluded that none of the IJ's adverse credibility findings were correct and that the asylum seeker's credibility had to be accepted. There were additional items that needed to be proved before the asylum seeker could have been granted asylum, but that case is very significant. On the issue of adverse credibility finding, both the BIA and the IJ discredited Abu Hawa in part because they believed he acted very suspiciously in failing to produce the quote original birth certificate. Is it clear in the record whether the original birth certificate Mr. Abu Hawa testified he might have at home was the certificate issued at birth or merely the original of that 1997 photocopy which he submitted? Your Honor, it's clear that what he testified to was that he might have the original of that 1997 photocopy at home. Did he say 1997 or did he say original of the birth certificate? Well, if, Your Honor, the record on that at page 312 begins with the IJ's questioning of his, of Mr. Abu Hawa's lawyer about the fact that on line 3, I take it from that this is not a contemporaneous birth certificate with the respondent's birth. Or in other words, this is properly classified as a delayed certificate. If your question was, is this an original document, you can ask him about that. And then on the next page, Mr. Abu Hawa's counsel asked, do you have it? Yes, in your possession at home. Yes, I could look for it. What's being talked about there, Your Honor, that he has at home that he could look for is the non-contemporaneous birth certificate that the IJ is referring to on the preceding page. But isn't the problem here not with it being a copy rather than the original, but with what it was? That is, it's 27 years after his birth, it's handwritten, nobody seems to know exactly what it is. Is it really a copy of his birth certificate? Now, I think that's what the administrator, the immigration judge, was saying. I don't know what this thing is. Judge Nelson — It's a piece of paper with various things on it. If that's all there was to support Mr. Abu Hawa's claim that he was a Sudanese national who, in fact, was Ghassim Abu Hawa and suffered political torture, I would agree with the Court. But the other, another critical adverse credibility finding that's just wrong and I don't think that was made by the IJ is that — But the problem is we don't care what the IJ said at this point. It's only the BIA's opinion we're reviewing. Exactly, Your Honor. And adopted by the BIA. Just adopted as far as the credibility only on the papers. I mean, whatever the IJ said about anything else, you can forget. Well, Your Honor, respectfully, if the IJ drew clearly erroneous adverse credibility findings and those were adopted by the BIA — But they weren't adopted by the BIA. To the extent that they had to do with the petitioner's identity, they were — and let me just focus on the nationality question, if I could, because — Well, I think the only issue is identity. That the — Well, that's part of — that's where I'm going, Your Honor. The — there's two elements to identity. One is Sudanese nationality and one is, are you really guessing Abuhawa? The only issue is whether he's Abuhawa, because when — we only take what the BIA did and the BIA only concurred in the result and then they found no error in the immigration judge's adverse credibility finding in as much as he failed to present sufficient evidence to establish his identity. That's where I'm going, Your Honor. One of the pieces of evidence that was presented was at page 348 of the March 15, 2004, transcript. And that is where, again, the IJ was asking Mr. Abuhawa about, how did you get this visa? You say it came from Cairo. Did you ever actually talk with a U.S. consulate? And the conclusion that the IJ reached was that there had been no contact between Mr. Abuhawa and the U.S. consulate. Mr. Abuhawa's testimony is directly opposite of that, and I'm sure the Court has it in front of it. But at page 348, and this is the IJ questioning Mr. Abuhawa, did you receive that visa at the United States Embassy in Egypt? No. It was sent back to the U.S. Embassy in Khartoum. But you're saying it was issued in Cairo. Answer, the interview was held in the U.S. Embassy in Khartoum. And then the IJ, all right, let's back up here. Are you saying that you had an interview with the United States consular officer in Khartoum? Yes, sir. And when was that? 1997. So the record that the BIA adopted and the adverse credibility finding that the BIA adopted included the conclusion that Mr. Abuhawa had never met with the U.S. consulate. And he did. He testified that he did. And based on that interview, his non-immigrant visa was issued. That reflects the fact that he was a Sudanese national and reflects the fact that he was Ghassim Abuhawa. The other credibility findings, Your Honor, that need to be looked at here have to do with what happened at the March 24 hearing. And what happened there was that the IJ concluded that Mr. Abuhawa couldn't be credible because he was coming into the country to study, excuse me, airline or air carrier maintenance. And at that hearing, on his own, the IJ introduced into the record a... Counsel, what I was trying to say to you, and I don't think you received that base fundamental difference here, is all that business that the IJ said about the airline and coming to study to blow up planes and all of that nonsense, the BIA did not adopt. And all we have to look at is the incomplete copy of the Sudanese passport, photocopies of the student visa and birth certificate. That's all that bothered the BIA, as far as I can tell. And that's all they adopted. And it seems to me that you ought to concentrate on those facts, because they didn't adopt the rest of what the IJ said. Well, Your Honor, I was trying to wiggle in there on the student visa portion of it that the BIA did adopt, which was based on the interview that Mr. Abuhawa had with the U.S. Consulate. Okay. And beyond that, Your Honor, what happened here, and this is why I really commend to the Court, before they rule on this, consideration of the Columa v. Gonzalez case that was actually submitted by the Department of Justice. And that case is at 512 F. 3rd, 1073. And in that case, involving a Sudanese national, the IJ applied a heightened identity requirement standard, which the BIA adopted. And this Court sent the matter back for further hearing based on the fact that the IJ had made a series of what it called non-credible credibility findings. And one of the non-credible credibility findings was the reason that the, in this matter, that the Sudanese national had testified that he came to the country in the first place, which was to study. Same as with Mr. Abuhawa. Well, I don't think the BIA here adopted anything about that. All the BIA said, and all I think you have to deal with, is he said, the main thing he says is that he was in possession of an original copy of birth certificate, and he failed to submit it. I really don't see what else the BIA is relying on. Your Honor, respectfully, we concur. The BIA's dismissal of Mr. Abuhawa's appeal in this case was a concurrence with the IJ's decision, finding no clear error in the immigration judge's adverse credibility findings. And those adverse credibility findings... In as much as he, not everything the IJ said, but only in as much as he failed to present sufficient evidence to establish his identity. Not even nationality or... But Your Honor, nationality is part of identity. Well, it's not. They charged him with being a Sudanese national. That's in the, in the papers, in which they, you know, they charged him, his notice of appearance, whatever it is. They said he was a Sudanese national. That's what his U.S. consular issued. And that's not disputed, despite what they said. They said he was a Sudanese national, and we have cases that say if they charge him with something, and it's not disputed, that's established. It's not a disputed fact. What is disputed is his identity. But Your Honor, his identity, which part of his identity is disputed? Who he is. That he's not, I don't know why it matters a lot, but they say he's not, hasn't proved that he is Abawaba or whatever it is. How would he, other than his driver's license and his visa and his passport, how is he supposed to prove who he is and the testimony? A birth certificate. And he brought a birth certificate, which his father sent him, which is a, not the original birth certificate, but his father went and got a copy of the birth certificate, sent it to him. He made a copy of that, of what his father sent him, and brought it in. They said, why'd you bring a copy instead of the original? He told him why he brought a copy, because he said the thing his father sent him was crinkled, aging, so he made a copy. The I.J. said to him, do you have the original? He said, I think I have it at home. The I.J. didn't say to him, this is not satisfactory, or why don't you bring the original? He made no comment on it, said nothing to suggest to him that that wasn't satisfactory evidence. That's right. And what the I.J. did say to him is, where's your contemporaneous birth certificate? I mean, I'm not sure I could produce a contemporaneous birth certificate. What you do is you write to the agency that keeps track of births, and then they send you a copy of what their records show. Well, he made a copy of that, and the I.J. asked him why he made the copy, and he told the I.J. And then the I.J. said, do you have what you made a copy from? And he said yes. I could look for it. Yeah, and the I.J. did not say, this is not enough, why don't you look for that? You're coming back next week. He had no way to know that this was a problem. So, therefore, without that kind of notice, he should not be held. This is your argument. Yes. I must say, Your Honor, you're doing it more eloquently than I was. Yes, that he should not be required to, or at least be given the opportunity to bring the original of his non-contemporaneous birth certificate. Because what happened at the next hearing in March 24th is where things took this very unusual turn with the submission of that course description for airline pilot as opposed to airline maintenance by the I.J. And, Your Honor, one of the things that's in the record that I commend the Court's least consideration of is at page 49, and it was part of the denied motion to reopen, that's the Long Beach City College Air Maintenance A.P.R.E. Program description. It has nothing to do with being a pilot, and the significant thing about that, Your Honor, is you'll see that there's links on that page 49 document, and one of the links is to the pilot program. Well, the I.J., in an effort to sort of mold his view that this person couldn't possibly be a legitimate asylum seeker because he was studying aviation maintenance, decided to click on the link that is the pilot program link rather than the aviation link. And so, if you look at the Exhibit 8 that was put into the record by the I.J., there it is. Start your pilot career here. Okay, you're off on another subject. I know. Well, I'm running out of time anyway. Okay. Think, think, think. One minute rebuttal. Just in 30 seconds. The other adverse credibility finding, and it was driven by this notion that he hadn't established his identity and that he was coming to study aviation maintenance, is that the burns, the cigarette burns that he had suffered. That's nothing. That's not in this. Your Honor, I respectfully read. You want to say you've got to prove more than we can. I think ultimately if we can prove this series of non-credible credibility findings that basically taint the entire proceeding, Well, I agree with you that there, and the BIA didn't find those reasons either to be. It should have because there was some clearly erroneous adverse credibility findings. Thank you. Okay. Good morning. May it please the Court. Jane Shofner for the Respondent. Respondent's position is that identity is the key issue in this case. All right. Then let me ask you about the key question. Identity is the issue. He brought in the papers. He brought in a copy. The I.J. said to him, do you have the original that you took the photocopy from, and why did you make the photocopy? He told him why he made the photocopy, and the I.J. did not say, well, it's not enough. You'll need more than that if you have a copy at home. We've got a meeting next week. You'll need that. I'm not satisfied with this. Why? How is somebody supposed to know if you bring in a photocopy that it's not enough if you're not told to bring in something else? And we would submit that the I.J. did put the petitioner on notice that the... Okay. Well, that's fine. Then tell me where he did that. At page 361 in the record, the I.J. asks petitioner, don't you understand how significant this is? Why have you not produced an original? And... What does he say? I'll need to flip to it, but I believe he says that he didn't know that he needed the original. Well, if you can... I don't have that page here. I've got other pages where he asks him why you have the original. Why did you bring a copy? He gives him an answer, and then that's it. But you have a different page. I'm looking at 313. At page 361, and the discussion is with respect to his contemporaneous birth certificate, and throughout the hearing, there was a lot of discussion about the certificate, the birth certificate, and some confusion over what the term original meant, whether it meant the birth certificate that was issued contemporaneous with the time of his birth or this subsequent birth certificate issued in 1997. So this discussion on page 361 does relate to the contemporaneous birth certificate, but the I.J. asks, Sir, what is your answer to the question, did you ever receive a birth certificate or was one issued at the time of your birth? Yes, sir, I do have. Where is that? It could be in my house. I don't have it with me. Sir, do you understand the significance of this? You are requesting asylum in the United States as a person who claims to be from the country of Sudan. You have not submitted a birth certificate that is contemporaneous with the time of your birth. If you're telling me that you may have a birth certificate that was issued at the time of your birth at home and you submitted to the court a birth certificate that was issued in September 1997 after or around the time you were coming to the United States, why would you not submit an original certificate that was issued at the time of your birth? On page 362, I didn't have it at the time. It was lost. I just found it like I don't know. And that's where that discussion of the birth certificate. And so the I.J. did, I think, emphasize that identity was an issue. But didn't he tell the I.J. that his father sent him a copy because he didn't have the original? What he had at home was the original of what his father sent him. Yes. Okay, and he brought in a photocopy of that. The I.J. told him, you know, if you've got the original of when you were born and at that point you got a birth certificate, you know, that would be terrific. But he explained that he got from his father in China who mailed him a copy of the birth certificate and that he made a copy of that birth certificate that his father sent him from whatever it was, 1997. But he brought a copy of that and he explained why he photostatted it. And he said that's what he said he had at home and he would look for it. Right. And I think you're right, Your Honor, that the I.J. didn't specifically ask in that moment if he could bring it in. But he did throughout the course of the hearing. The colloquy you're talking about happened on 312. The page, the colloquy that I just read from happened on 361. It was, I think Petitioner was fairly unnoticed that the birth certificate was an issue. And even in his subsequent motions, the board emphasized he has yet to produce his original birth certificate. But in the motion to reconsider and the subsequent motion to reopen, Petitioner still has not produced that original birth certificate. There was a real problem with this birth certificate. Not that it was a copy of what he had at home, but what it was. That is, the problem was not that he was presenting a copy of what he had at home, but that what he presented in the view of the administrative law judge, the administrative judge, didn't establish his identity because it was 27 years old and it was handwritten and it was of suspicious origin and so on. That's the real question, whether, on the basis of that evidence, they were required to accept that he was the person he said he was. That's the real question, isn't it? That's exactly right. And the fact that... If he didn't save his birth certificate when he was born in Sudan, that's the end of him. He can't establish who he is. That he's not, you know, he's... What's his name? Gassim... Gassim Oubahawa. Maybe he's Gassim Jones. Right. How... You know, if he lost the original birth certificate, if a Sudanese didn't keep his original birth certificate, that's the end of him. The... And we're not saying that, Your Honor. The birth certificate is not the only issue in this case. He also produced an incomplete photocopy of a passport that he admitted that he obtained by fraud. Well, of course he obtained it by fraud. If he wanted to leave Sudan and the rules did not permit him to leave Sudan, of course he had to get... You know, we have all kinds of people who escape from countries by not telling the authorities the truth. And I understand that, Your Honor, but there are two things. One, we don't have any record evidence relating to his claim that he had to be under the age of 21. He also said at one point he had to be under the age of 18 to leave the country. The other issue is we absolutely recognize that folks will go to extraordinary means to leave persecution, but as the Board held in matter of OD, there's a difference between obtaining a document by fraud to escape persecution and producing a fraudulent document years later at a time and place removed from the incidents of persecution to establish your identity. And in matter of OD, the Board held that it's appropriate for an IJ to draw an adverse inference in that instance because in this situation, the IJ just didn't know what to believe about who this individual was, because the discrepancy in birth dates is what called the petitioner's identity into question in the first place. One date of birth on his birth certificate and another date of birth on his passport and his visa. He explained that in order to leave the country, he couldn't tell them his real birth date. Yes, and no one's holding that against him. So that explains the discrepancy. Instead, he'd say, well, you got it by fraud. Well, of course he got it with misrepresenting things to the authorities who wouldn't have let him out if he had told them the truth. And there's no dispute about that. The question is whether it was appropriate for him to try to produce those fraudulently obtained documents years later to establish his identity and our position. So if he can't produce those documents and he can't produce his original birth certificate because he didn't keep it when he was born, whatever it is, 25 years ago in Sudan, then he can't ever prove his identity. Well, there are thousands of asylum seekers every year who are able to. What difference does it make if his name is something different? It makes a difference because there are some individuals who simply are not eligible for asylum. The definition of refugee at 101A42 specifically excludes individuals who, for example, have participated in the persecution of others. At 208, the Act provides that individuals who have engaged in particularly serious crimes or who are a danger to the United States are also not eligible for asylum. So it matters very much who he is, and we just don't know. And Petitioner has not pointed to any record evidence that would compel reversal of the Board's conclusion. What's it supposed to give you if you won't take the visa or the documents he got from the Sudanese because he couldn't have escaped the country if he told them the truth, and you don't take this because he doesn't have the original birth certificate, then there's nothing he can do to prove who he is. Well, I'm not certain that's the case. Well, you're not certain, but, you know, it seems that way. Do you think he has to have the birth certificate from the time he was born? No, that's not necessarily a requirement. He has not yet produced the birth certificate that he does have and has failed to explain why in all of the subsequent motions he's still not produced it and has not identified any record evidence that would compel reversal of the Board's conclusion. The Board was reasonable to just not know what to believe in this case. Don't you think that if somebody produces evidence to you, I mean, there are cases, for instance, you say, well, I've got my brother is leaving here, living here and can identify me, and we say, well, they say to him, well, why don't you bring your brother? And then the brother doesn't come. Then you draw the inference that his brother wouldn't support him. Well, that's an excellent question, Your Honor, because that's it. No, no, that's not a question. That's a statement. I'm sorry. Right. You can do that. But if you bring papers and the IJ says, well, why didn't you bring other papers, but he doesn't say this is not acceptable, we're having another hearing, you'll have to bring the original papers. Then, you know, I would say if he didn't bring his original papers, that would be a reason. But if you don't say to him, all you do is ask him questions and you don't say, I won't accept this, I won't accept these papers. Now, if you want to get to prove you're Joe Smith, bring me these papers. But you don't say that. Don't you have to advise the person who's coming that you won't accept the papers he brought? Two things, if I may, Your Honor. We would submit that Petitioner was on fair notice, that his identity was an issue, that the IJ asked him a number of questions about not only the birth certificate but the passport and the visa. And the IJ, at page 361, stressed to Petitioner how important it was that he try to prove his identity and ask him why he hadn't produced. And he answered. And he didn't say that's not acceptable. And, if Your Honor, may I respond to the comment you made about the brother, too, because that's an issue in this case as well. Petitioner claims that his brother is living in the United States, in fact, living with him in the United States. And the IJ gave Petitioner an opportunity to have his brother come in to court, testify, perhaps corroborate his identity. But Petitioner's counsel declined to take that opportunity, said that his brother was afraid to come to court. His brother's an asylee. I know it often happens that folks who do not have any legal status are afraid to come to the United States. But it's unclear why the brother who does have legal status was afraid to come to court. Did he have counsel before the immigration judge, or was he appearing pro se? He had counsel at all times, and he was represented by some of the finest law firms in this country. Without that, he had counsel. That's all I want to know. Yes. Yes, he did have counsel at all times. You know, I noticed on page 255 of the excerpts of record, when they're talking about the original birth certificate, the question was, there was a border around the yellow document. Can you explain that? It was copied from the original birth certificate. So what I'm holding in my hand was copied from an original, color copied from the original. Do you have the original? Yes. Did you bring it with you? It was mailed to me. It was mailed to you, but did you bring it with you to court? No, sir. Do you have it? Yes. In your possession at home? Yes. I could look for it.  Answer. The original one really looked old and weakened paper. That's why. You say the original one is old and on weakened paper. Yes. Fragile. Then, how did you get possession of the original? We'll call that an original for the purposes of that question. How did you get possession of it? It was mailed to me. And the question is, are they talking about the original false birth certificate or are they talking about the 1997 birth certificate? Yes. My understanding from that record and from that passage, and it's not at all clear, but my understanding is that they're talking about the 1997 birth certificate. All right. Assuming that they had a copy he said he had at home, and your response is he never brought it in. Yes. All right. Thank you. And did D.I.J. ever say to him, the copy is not sufficient to establish your identity, you'll have to bring in the original? We're having a hearing next week. He didn't say those exact words, Your Honor, but I think the passage that was just read as well as the passage that I read earlier all indicate that D.I.J. was dissatisfied with the copy that Petitioner provided and asked him, well, why didn't you bring? And then he gave him an explanation, which he didn't say is unsatisfactory. No, he didn't say that explanation was unsatisfactory, but I think Petitioner was represented by counsel. Counsel should have been able to infer that the I.J. was dissatisfied and bring that evidence the next time to court. I think that's the question. If the I.J. asks him questions and says, why didn't you bring the original, and he gets an explanation and he doesn't say this is not adequate evidence, not sufficient, but he's given an explanation and the lawyer is supposed to guess whether that satisfied him or didn't. Is the lawyer on notice or should the I.J. be required to say, you're going to be here next week, this is not enough evidence, bring the evidence? That's the question, I think. Sure. And I would say that at all times it's the alien's burden to prove his eligibility for relief. He has an obligation to prove his case. And the I.J., I think, fairly let him know that he was not convinced that he had met his burden. Let me ask, I understand you said he was represented by counsel. One would think that if counsel saw that the I.J. was troubled by the fact that it was a copy, counsel would have said to him, okay, at the next hearing, bring the original. I mean, if I were handling the case, I wouldn't wait and say that, well, the I.J. didn't tell me to bring it, so we don't have to bring it. I don't think Judge Friedman is familiar with the quality of the immigration bar. You are, and I'm not talking about this particular – I don't know who the lawyer was in this case,     immigration bar is generally, which is as close to incompetent as you can be. And I'm sure you're aware of that. I am. And we're talking about a rule that's going to apply in all immigration cases. And I know it's the burden of the immigrant, but if we're going to count on the quality of the immigration bar, it's going to be a lot of people are going to get sent back to lose their lives because of that. And I understand your concerns, Your Honor. In this case, and the question in this case is whether Petitioner has identified any record evidence that compels reversal of the board's conclusion, the attorneys here were representatives from Foley & Lardner and Davis Wright & Tremaine, Arlen Porter, and – What is it about this guy that gets all of those lawyers? He's very fortunate to have such fine representation. And the board – You know, it's the rule I'm concerned about is that, you know, what is the duty of the immigration judge? And we have, you know, cases where you have to tell somebody, if you're going to say there's a conflict, you have to give somebody the opportunity. You tell them, I'm not satisfied with this. What's your explanation? You know, that's the rule in immigration cases. Somebody has an opportunity. If you're not satisfied with that, you ask, why did you bring in this evidence? And you tell them why you brought it in. And if you're not satisfied with it and you're going to have another hearing, why shouldn't it be the duty of the immigration judge to say, I'm not satisfied. I want the original. I think – You know, a really competent lawyer would infer what Judge Friedman says. And if he were the lawyer, that's what would happen. But in immigration cases, that's what we're talking about. With the quality of lawyers we have, that's not going to happen. You're lucky when they show up most of the time. And in the briefs, as you know, they often give you the wrong name of the party, the wrong country. Sure. No, and I recognize that. And in a perfect world, maybe the IJ would have been more explicit in demanding that the petitioner bring in that original. But the IJ was not subtle in expressing his doubts about who this petitioner is. And moreover, the board, in its decision, again, said we don't have that original. They said it in its decision on direct appeal. The board said it again, denying the motion to reconsider, emphasized again that he had yet to produce that original birth certificate, denied it again in its motion to reopen, said you've yet to produce that original birth certificate. I don't think you can fairly argue that this petitioner was not on notice that his identity was an issue and that he needed to produce that original birth certificate. And since he had it at home, it was reasonably available and easily produced. It's unclear why, to date, years later, he's still not produced it. We're talking not about the actual original when he was born. We're talking about the one that his father got and sent him, right? The 1997 one. And he said, I think I could find it. He didn't say, I know where it is. In defense of the immigration board, I have to admit that my son's an immigration lawyer. And I would like that comment not to pertain to 100 percent of the board. I think I said most. Thank you. But you know the things we have going on in the court and with the Department of Justice to try to do something about this problem and that it is a very serious problem. That I agree with. We're not through yet. No, it's not. And I also sympathize with the problems of the immigration judge. They get their decisions. They have to dictate them right afterwards. They don't have enough help. But on the other hand, what we're dealing with is sending people back for asylum. We're sending a lot of them back to countries where they may lose their lives because of things like that. And that's why I'm concerned about the burden. Rather than a lot of these places, we send people back to Iran and Iraq. And if we're going to put too much of a burden on the immigrant, rather than putting a due process burden on the immigration judge, it can sympathize with the immigration judge and say that the immigrant ought to have a good lawyer. But usually they don't. And when the lawyer makes a mistake, the immigrant gets sent back to places where he may get executed. And we have to be, I think, very careful with what kind of standards we establish. But I appreciate your argument. It's really a – I mean, you – I think you did extremely well. Well, thank you, Your Honor. Thank you. Fifteen minutes old. Well, it's worth it. If there are no further questions, we would ask the Court to deny the three consolidated petitions for review. Thank you. Okay. You're going to have no more than two minutes. I understand. Your Honors, put your finger right on the issue. This was not like the brother where the I.J. said, you know, I expect to hear from the brother, and if I don't, I'm going to draw an adverse credibility finding. In fact, the whole discussion about where's your birth certificate and how come you haven't produced it related to the contemporaneous birth certificate at page 361 of the record. Do you understand the significance of this? You are requesting asylum in the United States as a person who claims to be from the country of Sudan. You have not submitted a birth certificate that is contemporaneous with the time of your birth. Why would you not submit an original birth certificate? And then he testifies he doesn't have it. Then there's further colloquy, and it's all related to your contemporaneous birth certificate on page 370. Mr. Blumenthal, you can ask questions along these lines, but my understanding of the respondent's testimony is that he said earlier he had a birth certificate that was contemporaneously issued. Yes, which he's not filed with the court. Well, he didn't really say that. And Mr. Blumenthal says I want to ask because he was responding to original. I'm not sure he understands the contemporaneously issued part. And then understandably, Mr. Blumenthal asked him, do you have a birth certificate issued before September 14, 1997? Did you have one issued earlier on page 371 and 372? Yes, but it's been a long time, and I didn't have it when I needed it. Do you have it now in your possession, one issued earlier than September 14, 1997? Answer, no. Did you have it at one time in this country, the U.S.? Answer, no. Did you have it in the Sudan? Yes, when I was young. And that's the point. As effective as Justice Nelson's, you know, son may be, a normal, big firm immigration lawyer — He's not big firm. He's a small firm — But that's somebody saying, well, that's nice. You know, he claims — You're the one from the big firm. And I'm taking the heat, Your Honor, because this is the first immigration case I've ever argued. And if I had tried that immigration case, my focus would have been on the contemporaneously issued birth certificate, not on the original of the non-contemporaneous birth certificate. And if the I.J. was going to draw an adverse credibility inference, he should have said, Now, Mr. Blumenthal, we're going to have one more hearing where I'm going to put in all this strange stuff about — No. He should have said, Now, Mr. Blumenthal, make sure that he brings the original of his non-contemporaneous birth certificate back. Because I don't hear the Department of Justice saying that you have to have a contemporaneously issued birth certificate to gain asylum. That couldn't be their position. And if you look at what was submitted, the photocopy of the non-contemporaneous birth certificate, which is at page 553 of the record, it looks pretty official to me. I know some of it's in handwriting, but it's got all kinds of stamps on it. And it identifies my client, Yasim Abu Hawa. It has his correct birth date. It has his mom's name. It has his dad's name. And unless we're just going to convert this into some sort of birther conspiracy, I think it's sufficient, Your Honor, to establish this identity. And if for no other reason than to give my client the opportunity to bring that original from home, if he has it, and to provide that — The original of the non-contemporaneous. Yes. The original of the non-contemporaneous birth certificate that would establish this identity, this case should be remanded so that we can have that opportunity. Thank you. Thank you. All right. The case here is submitted.
judges: Friedman, Nelson D. W., Reinhardt